**TRIANGLE FINISHING CORP. and Arthur J. Nisbet, Plaintiffs,**

v.

**FAIR LAWN FINISHING COMPANY and Weldon G. Helmus, Defendants.**

United States District Court
S. D. New York.
March 12, 1956.

Harry Price, New York City, for plaintiffs.

Burgess & Dinklage, New York City, by Louis Burgess, W. D. Keith, Thomas J. Byrne, New York City, of counsel, for defendants.

SUGARMAN, District Judge.

On September 7, 1950 the plaintiffs, Triangle Finishing Corp. and Arthur J. Nisbet, commenced suit against the defendants Fair Lawn Finishing Company and Weldon G. Helmus.

**The Pleadings.**

The complaint, as finally amended, states two causes of action. The first, basing jurisdiction upon a federal question, diversity and amount alleges the residence of the parties; that from 1939 to 1948 the plaintiff, Arthur J. Nisbet (Nisbet), experimented upon and developed a method of heat setting nylon fibers and, in 1948, at the plant of the plaintiff, Triangle Finishing Corp (Triangle) built a machine for heat setting knit nylon fabrics in a certain manner called Trianizing, which became widely accepted in the nylon knit fabric industry. It further alleges that during that period Nisbet confidentially disclosed his process of Trianizing to the defendants, Fair Lawn Finishing Company (Fair Lawn) and Weldon G. Helmus (Helmus) with the limitation that the defendants not appropriate the process unto themselves. It further alleges that nonetheless, defendants obtained two patents (Nos. 2,-499,141 and 2,499,142) on February 28, 1950, based upon Nisbet's disclosures to defendants from which patents it is alleged defendants are benefitting financially. The first cause of action then seeks judgment

"(a) declaring said patents Nos. 2,499,141 and 2,499,142 to be the property of and to belong to Plaintiffs and that Defendants are trustees ex malificio in behalf of Plaintiffs;

"(b) awarding an accounting to Plaintiffs so that they may recover all income, profits, royalties and other gains which Defendants, solely and jointly, have made and secured as a result of their possession of said patents Nos. 2,499,141 and 2,-499,142;

"(c) compelling an assignment of said patents Nos. 2,499,141 and 2,-499,142 to Plaintiffs, together with an assignment of all license agreements made for or in behalf of Defendants."

Except for the residence of the parties, the answer of the defendants to the amended complaint denies all of the first cause of action.

The second cause of action, basing jurisdiction upon the patent laws, alleges that Helmus applied for, received and assigned to Fair Lawn said patents; that defendants, before and since the issuance thereof, have threatened plaintiffs with infringement thereof; that said patents are the property of plaintiffs, are "void, invalid, of no legal effect, and should be cancelled"; that they were invented by Nisbet and not by Helmus, but were "surreptitiously and unjustly patented" by defendants. Then, asserting an actual controversy between plaintiffs and defendants as to infringement, validity and ownership of said patents and the absence of an adequate remedy at law, the second cause of action seeks a judgment

"(d) declaring that Plaintiffs do not infringe said patents Nos. 2,499,- 141 and 2,499,142;

"(e) enjoining and restraining Defendants, their officers, directors, employees, agents and all those acting for or in their behalf, at first temporarily during trial and thereafter permanently, from threatening or harassing Plaintiffs or their customers or prospective customers with infringement of said patents Nos. 2,499,141 and 2,499,142;

"(f) awarding costs, counsel fees and such other relief as may seem just and proper in the premises."

Except for the allegations of Helmus' application for, receipt by and assignment to Fair Lawn of said patents, the defendants' answer denies all of the second cause of action.

In addition to the foregoing denials, the answer, on behalf of both defendants, sets forth the defense that Nisbet, at the time he made the alleged disclosure to defendants, was an employee of duPont, under contract that any invention conceived by him during said employment should become the property of his employer. It might parenthetically be noted that this defense was abandoned during trial, the parties agreeing that, assuming the inventions to have been conceived by Nisbet, duPont asserts no claim to them. A further defense, on behalf of Helmus, avers that he, as the inventor of the patents, assigned the applications therefor to Fair Lawn, to whom they were ultimately granted and that any acts by Helmus were as an officer and employee of Fair Lawn and not on his own behalf.

The answer then sets up a counterclaim which, after predicating jurisdiction upon the patent laws, alleges the residence of the parties; that Fair Lawn is vested with right, title and interest in patents Nos. 2,499,141 and 2,499,142; that said patents are of great value to Fair Lawn and the public; that Fair Lawn expended large sums of money in making the inventions profitable to it and useful to the public; that Fair Lawn employed the inventions of, and manufactured and sold articles made according to and embodying the invention of said patents; that such articles have been introduced into extensive commercial use; that great and increasing demand exists for them, which demand Fair Lawn is prepared to meet to the benefit and advantage of the public. The counterclaim then charges that plaintiffs, knowing the foregoing and without permission from Fair Lawn, injured it by unlawfully practicing the methods exposed by patent No. 2,499,142 and used and sold articles made according to the inventions disclosed by patent No. 2,499,141; that plaintiffs derived, and will continue to derive, profit therefrom unless such alleged infringement be restrained; that plaintiffs continue their alleged infringement notwithstanding notice to desist from Fair Lawn; and finally, that plaintiffs have rejected Fair Lawn's offer to grant them a license under said patents. The defendants then demand judgment

"(a) dismissing the complaint as to them and awarding expenses incurred in connection with this action and a reasonable attorney's fee;

"(b) holding that said letters patent of the United States Nos. 2,499,-

141 and 2,499,142 are good and valid in law, that defendant Fair Lawn Finishing Company is vested with all right, title and interest in and to the inventions of and said letters patent and that plaintiffs have infringed upon said letters patent;

"(c) awarding a permanent injunction, and a preliminary injunction during the pendency of this action, restraining and enjoining plaintiffs, Triangle Finishing Corp. and Arthur J. Nisbet, their legal representatives or assigns, and each of their attorneys, agents, servants, employees and all others acting by and under their direction or authority from employing the inventions of said letters patent No. 2,499,142 and from making, using or selling articles made according to and embodying the inventions of said letters patent No. 2,499,141;

"(d) awarding an accounting of the damages of defendant, Fair Lawn Finishing Company, because of infringement of plaintiffs upon said letters patent Nos. 2,499,141 and 2,499,142, and on said accounting the profits, gains and advantages of plaintiffs because of their said infringement and the damages suffered by defendant, Fair Lawn Finishing Company, because of said infringement, be ascertained in determining the damages of the defendant, Fair Lawn Finishing Company, because of said infringement of plaintiffs, and that the award of damages to defendant, Fair Lawn Finishing Company, be increased in accordance with the provisions of the statutes in such case made and provided."

Except that it is being based upon the patent laws and as to the residence of the parties, the plaintiff's reply, in substance, denies all of the allegations of the counterclaim. The reply then pleads separate defenses as follows: that there is non-infringement; that there is absence of liability for infringement; that the patents are unenforceable; that the patents are invalid in that: (a) they do not represent any new and useful process and machine or improvement thereon, (b) the alleged inventions were known and used by others in this country, (c) and were patented and described in printed publications for more than one year prior to the filing of the patents in suit, (d) the patents do not show invention, (e) the applications for the patents were not made by the true inventors thereof, (f) the written description of the alleged inventions was not in full, clear, concise and exact terms, (g) the inventions were not made by Helmus, but by other persons in the employ of duPont Company and Morrison Machine Company, who cooperated with Helmus, (h) defendants caused corresponding applications to be filed or patents to be issued without securing proper license therefor. Finally, the reply asserts that the patents are unenforceable because defendants seek a monopoly in the United States and foreign countries in processes and machinery for heat treating nylon tricot knit fabrics under patents which made no invention and gave no commercial benefit. Dismissal of the counterclaim with costs and counsel fees is then prayed for.

### The Issues.

At pre-trial before Judge Bondy the issues as to the first cause of action were stated to be substantially: whether there was a voluntary confidential disclosure of the subject matter of both patents by Nisbet as an employee of duPont or otherwise to defendants, under a contract of sale and purchase thereof.

At pre-trial before Judge Bondy the issues of infringement were stated by the parties to be confined to claims 1–8 both inclusive of patent No. 2,499,141 and claims 1–5 both inclusive of patent No. 2,499,142. However, at the conclusion of the trial defendant reduced the issue to claims 1–7 both inclusive of patent No. 2,499,141.

### The Patents.

Two patents are involved in this litigation: No. 2,499,141, filed December 9, 1947 by Helmus and granted Febru-

ary 28, 1950 to Fair Lawn as assignee of Helmus and No. 2,499,142, filed July 14, 1948 by Helmus and granted February 28, 1950 to Fair Lawn as assignee of Helmus.

Both patents, in substantially the same language, after reviewing the requirements for the setting of polyamide fiber materials on a production basis and the methods previously employed to accomplish same, criticize the prior methods as being "relatively cumbersome and inefficient in commercial operation, * * *", as not yielding "desirably uniform results * * *", as requiring "a relatively high amount of skill on the part of the operator * * *", as not readily lending themselves "to the desired accurate maintenance and control of the relatively critical operating conditions required for a satisfactory setting of polyamide fibers * * *" and as being "encumbered by a relatively low operational output usually not materially exceeding 4-5 yards per minute."

The claims of the patents allegedly infringed are severally analyzed in an appendix annexed hereto. Study of the patents discloses that they propose a method and device for heat setting heat-settable textile materials and particularly polyamides by employing more or less of the following:

(1) a moveable path of travel of the material

(2) in from 1 to 10 seconds

(3) at a speed of 36 to 144 linear yards per minute

(4) through a heating zone where

(5) heat of (a) a controlled temperature of from 300 to 500° F. and (b) when a gas, of a velocity in excess of 400 feet per minute

(6) is uniformly impinged on the material (a) upon both sides or (b) upon one side while the material's carrying surface is heated to impart an equal temperature to the other

(7) through nozzles and

(8) the material is cooled upon emerging from the heating zone.

### Decision

#### I

■ The record is utterly barren of any proof of a voluntary disclosure confidential or otherwise of the subject matter of both patents by Nisbet, either as an employee of duPont or otherwise, to defendants, under a contract of sale and purchase thereof. Accordingly, the plaintiffs' first cause of action is dismissed.

#### II

■ Every one of the eight elements of the defendants' patents hereinabove set forth at the conclusion of the section of this opinion entitled "The Patents" was proven to have been known to the prior art and literature.

The testimony and exhibits show that the elements of the claimed inventions were anticipated at least to the extent as follows:

1. a moveable path of travel of the material

PE[1] 1—Benger patent No. 2,365,931, December 26, 1944.

Experiments by duPont in 1941 on the Hellwig machine built by duPont on the Benger patent (SM 54, 84).

Experiments by duPont in 1945-6 on tenter frame at Crompton Shenandoah plant (SM 64).

Experiments by duPont in November 1947 on tenter frame at Triangle plant (SM 67, 72).

PE 7—Wedler patent No. 2,343,351 (SM 102, 103).

PE 8—Buck patent No. 1,717,004 (SM 106, 107).

PE 9—Page 159, treatise on finishing by Depierre (SM 108).

DE[2] WWW—Page 154B, treatise on finishing by Depierre (SM 1800).

PE 10—treatise on finishing by Bean (SM 110, 111).

1. Plaintiffs' exhibit.

2. Defendants' exhibit.

PE 11—treatise on textiles by Hall (SM 112, 113).

PE 14—Spooner patent No. 2,060,430 (SM 120–122).

PE 15—Kemp patent No. 1,676,091 (SM 122–124).

PE 17—British Celanese patent No. 549,639 (SM 125–128).

PE 18—British patent No. 513,354 (SM 128–130).

PE 19—Hanson patent No. 2,306,019 (SM 131).

PE 20—Hurxthal patent No. 1,749,584 (SM 131).

Bur direct (SM 545–548).

PE 27, 28—Proximity Manufacturing Co. tenter housings (SM 550–554).

PE 29—tenter housings of the Mineola Manufacturing Company (SM 554–556).

PE 30—Cannon Mills tenter housings (SM 556–559).

DE DD—Proctor & Schwartz, Inc. drying systems (SM 564–572).

PE 31—Dalglish Pin Tenter (SM 583, 584).

Van Vlaanderin tenter frame (SM 681, 682, 686).

PE 44—Helmus sketch (SM 727, 728).

DE JJJ—Page 9.02, duPont pamphlet (SM 1204–1215).

DE EEEE—Andrews & Goodrich Dryer (SM 1943).

PE 90A.1., 12.—defendants' admissions.

2. in from 1 to 10 seconds

PE 1—Benger patent No. 2,365,931, December 26, 1944.

Experiments by duPont in 1941 on the Hellwig machine built by duPont on the Benger patent (SM 54, 84).

Experiments by duPont in 1945-6 on tenter frame at Crompton Shenandoah plant (SM 64).

PE 5—duPont Nylon Technical Service, June 4, 1946.

PE 17—British Celanese patent No. 549,369 (SM 125–128).

Seaman cross (SM 456).

DE JJ—duPont report (SM 795).

DE UU–25—Groh, Silk Journal and Rayon World (SM 1170–1173, 1781).

PE 6—Etchells, American Dyestuff Reporter, January 1946 (SM 1175–1184, 1781).

DE UU–27—Etchells, Rayon Textile Monthly (SM 1202, 1782).

DE JJJ—Page 9.02, duPont pamphlet (SM 1204–1215).

Mark direct (SM 1226).

Mark direct (SM 1263).

Helmus direct (SM 1965).

3. at a speed of 36 to 144 linear yards per minute

Established speeds of travel in tenter frames (SM 94).

PE 10—treatise on finishing by Bean (SM 110, 111).

PE 11—treatise on textiles by Hall (SM 112, 113).

PE 12a—Andrews patent No. 1,776,609 (SM 113, 114).

Bur direct (SM 545–547).

DE DD—Proctor & Schwartz, Inc. drying systems (SM 564–572, 579–582).

PE 31—Dalglish Pin Tenter (SM 583, 584).

4. through a heating zone where

PE 1—Benger patent No. 2,365,931, December 26, 1944.

Experiments by duPont in 1941 on the Hellwig machine built by duPont on the Benger patent (SM 54, 84).

Experiments by duPont in 1945-6 on tenter frame at Crompton Shenandoah plant (SM 64).

Experiments by duPont in 1946 on frames through chamber (SM 66).

Experiments by duPont in November 1947 on tenter frame at Triangle plant (SM 67, 72).

All tenter frames have heating zones (SM 93).

PE 7—Wedler patent No. 2,343,351 (SM 102–103).

PE 8—Buck patent No. 1,717,004 (SM 106, 107).

PE 9—Page 159, treatise on finishing by Depierre (SM 108).

DE WWW—Page 154B, treatise on finishing by Depierre (SM 1800).

PE 10—treatise on finishing by Bean (SM 110, 111).

PE 11—treatise on textiles by Hall (SM 112, 113).

PE 14—Spooner patent No. 2,060,430 (SM 120–122).

PE 15—Kemp patent No. 1,676,091 (SM 122–124).

PE 17—British Celanese patent No. 549,369 (SM 125–128).

PE 18—British patent No. 513,354 (SM 128–130).

PE 19—Hanson patent No. 2,306,019 (SM 131).

PE 20—Hurxthal patent No. 1,749,584 (SM 131).

Seaman direct (SM 444).

Seaman cross (SM 456).

PE 27, 28—Proximity Manufacturing Co. tenter housings (SM 550–554).

PE 29—tenter housings of the Mineola Manufacturing Company (SM 554–556).

PE 30—Cannon Mills tenter housings (SM 556–559).

DE DD—Proctor & Schwartz, Inc. drying systems (SM 564–572, 579–582).

PE 31—Dalglish Pin Tenter (SM 583–584).

Van Vlaanderin tenter frame (SM 681, 682).

PE 44—Helmus sketch (SM 727, 728).

DE UU–27—Etchells, Rayon Textile Monthly (SM 1202, 1782).

DE JJJ—duPont pamphlet (SM 1204–1215).

Mark direct (SM 1263).

DE EEEE—Andrews & Goodrich Dryer (SM 1943).

PE 90A.1., 12.—defendants' admissions.

5. heat of (a) a controlled temperature from 300 to 500° F. and

PE 1—Benger patent No. 2,365,931, December 26, 1944.

Experiments by duPont in 1941 on the Hellwig machine built by duPont on the Benger patent (SM 54, 84).

Experiments by duPont in 1945–6 on tenter frame at Crompton Shenandoah plant (SM 64).

Experiments by duPont in 1946 on frames through chamber (SM 66).

PE 5—duPont Nylon Technical Service, June 4, 1946.

PE 9—Page 159, treatise on finishing by Depierre (SM 108).

DE WWW—Page 154B, treatise on finishing by Depierre (SM 1800).

PE 12a–d—Andrews patents a) 1,776,609 b) 2,071,015 c) 2,389,586 d) 2,473,629 (SM 113–117).

PE 13b—Walter patent No. 2,471,802.

PE 15—Kemp patent No. 1,676,091 (SM 122–124).

PE 16—French patent No. 2,384,990 (SM 124).

PE 17—British Celanese patent No. 549,369 (SM 125–128).

PE 18—British patent No. 513,354 (SM 128–130).

PE 20—Hurxthal patent No. 1,749,584 (SM 131).

Seaman direct (SM 444).

Seaman cross (SM 456).

Bur direct (SM 549).

PE 27, 28—Proximity Manufacturing Co. tenter housings (SM 550–554).

PE 29—tenter housings of the Mineola Manufacturing Company (SM 554–556).

PE 30—Cannon Mills tenter housings (SM 556–559).

DE DD—Proctor & Schwartz, Inc. drying systems (SM 564–572, 579–582).

PE 31—Dalglish Pin Tenter (SM 583, 584).

DE JJ—du Pont report (SM 795).

DE UU–24—duPont pamphlet (SM 1169, 1170, 1779).

DE UU–23—Miles patent No. 2,295,593 (SM 1167, 1774).

DE UU–25—Groh, Silk Journal and Rayon World (SM 1170–1173, 1781).

DE UU–26—Silk Journal and Rayon World, August 1945 (SM 1174, 1781).

PE 6—Etchells, American Dyestuff Reporter, January 1946 (SM 1175–1184, 1781).

DE UU–27—Etchells, Rayon Textile Monthly (SM 1202, 1782).

DE JJJ—duPont pamphlet (SM 1204–1215).

Mark direct (SM 1226).

Mark direct (SM 1263).

Helmus direct (SM 1965).

PE 90A.24—defendants' admissions.

5. heat (b) when a gas, of a velocity in excess of 400 feet per minute

Established velocity of heating gases in tenter frames (SM 94).

PE 9—Page 159, treatise on finishing by Depierre (SM 108).

DE WWW—Page 154B, treatise on finishing by Depierre (SM 1800).

PE 12a–d—Andrews patents a) 1,-776,609 b) 2,071,015 c) 2,389,586 d) 2,-473,629 (SM 113–117).

PE 13b—Walter patent No. 2,471,802.

PE 15—Kemp patent No. 1,676,091 (SM 122–124).

PE 20—Hurxthal patent No. 1,749,-584 (SM 131).

Bur direct (SM 545–547).

PE 27, 28—Proximity Manufacturing Co. tenter housings (SM 550–554).

PE 29—tenter housings of the Mineola Manufacturing Company (SM 554–556).

PE 30—Cannon Mills tenter housings (SM 556–559).

DE DD—Proctor & Schwartz, Inc. drying systems (SM 564–572, 579–582).

PE 31—Dalglish Pin Tenter (SM 583, 584).

DE UU–24—duPont pamphlet (SM 1169, 1170, 1779).

DE UU–23—Miles patent No. 2,295,-593 (SM 1167, 1774).

DE UU–25—Groh, Silk Journal and Rayon World (SM 1170–1173, 1781).

DE UU–26—Silk Journal and Rayon World, August 1945 (SM 1174, 1781).

PE 6—Etchells, American Dyestuff Reporter, January 1946 (SM 1175–1184, 1781).

PE 90A.27—defendants' admissions.

6. is uniformly impinged on the material (a) upon both sides

PE 7—Wedler patent No. 2,343,351 (SM 102).

PE 11—treatise on textiles by Hall (SM 112, 113).

PE 14—Spooner patent No. 2,060,430 (SM 120–122).

PE 20—Hurxthal patent No. 1,749,-584 (SM 131).

Bur direct (SM 545–547).

PE 27, 28—Proximity Manufacturing Co. tenter housings (SM 550–554).

PE 30—Cannon Mills tenter housings (SM 556–559).

DE DD—Proctor & Schwartz, Inc. drying systems (SM 564–572, 579–582).

PE 31—Dalglish Pin Tenter (SM 583, 584).

Van Vlaanderin tenter frame (SM 681, 682).

PE 44—Helmus sketch (SM 727, 728).

Mark direct (SM 1263).

6. is uniformly impinged on the material (b) upon one side while the material's carrying surface is heated to impart an equal temperature to the other

PE 7—Wedler patent No. 2,343,351 (SM 102).

PE 11—treatise on textiles by Hall (SM 112, 113).

PE 13a—Walter patent No. 2,440,648 (SM 117, 118).

PE 14—Spooner patent No. 2,060,430 (SM 120–122).

PE 27, 28—Proximity Manufacturing Co. tenter housings (SM 550–554).

PE 30—Cannon Mills tenter housings (SM 556–559).

DE DD—Proctor & Schwartz, Inc. drying systems (SM 564–572, 579–582).

Mark direct (SM 1263).

7. through nozzles and

PE 8—Buck patent No. 1,717,004 (SM 106, 107).

PE 12a—Andrews patent No. 1,776,609 (SM 113, 114).

PE 12b—Andrews patent No. 2,071,-015 (SM 114, 115).

PE 13a—Walter patent No. 2,440,648 (SM 117, 118).

PE 14—Spooner patent No. 2,060,430 (SM 120–122).

PE 15—Kemp patent No. 1,676,091 (SM 122–124).

PE 20—Hurxthal patent No. 1,749,-584 (SM 131).

Bur direct (SM 545–547).

PE 27, 28—Proximity Manufacturing Co. tenter housings (SM 550–554).

PE 29—tenter housings of the Mineola Manufacturing Company (SM 554–556).

PE 30—Cannon Mills tenter housings (SM 556–559).

DE DD—Proctor & Schwartz, Inc. drying systems (SM 564–572, 579–582).

PE 31—Dalglish Pin Tenter (SM 583, 584).

PE 44—Helmus sketch (SM 727, 728).

DE EEEE—Andrews & Goodrich Dryer (SM 1943).

8. the material is cooled upon emerging from the heating zone

Established practice in textile trade (SM 94).

PE 7—Wedler patent No. 2,343,351 (SM 102, 103).

The crux of the "invention resides in an entirely novel heat setting method of [sic—for] heat-settable textile fabrics involving the use of *high velocity* heating gas currents of predetermined heat setting temperature for the fabric and a total exposure time of the fabric to the high velocity heating gas current of from 1–10 seconds"[3] and "is the utilization of high velocity heating gas currents directed to impinge upon the fabric and permitting high speed operations of setting treatment in a continuous manner, while at the same time enabling the maintaining of a very close limitation of critical conditions".[4] The patentee's "contribution" involves the "use of a high velocity heating gas current and the continuous high speed heat setting of textile fabrics".[5] The "basic elements as disclosed in these patents can be summarized as follows: The invention consists in propelling hot air on and uniformly across the continuedly moving goods whereby the air has a relatively high impingement velocity. The air is at a predetermined heat set temperature and the good[s] are at the same temperature, from 1 to 10 seconds. The heat setting temperatures are specified to be between 300 and 500, preferably between 400 and 450. The air velocities are specified to be above 400, preferably between 400 and 4000 feet per minute".[6] "The Court: What I define to be one of the most significant aspects of the invention claimed is the blowing of hot air at variables of from 400 to 4000 feet per minute. The Witness: That is correct."[7]

This aggregation of elements well known in the art was not invention even though the result of the aggregation was extraordinarily satisfactory [testimony of Dr. Mark (SM 1232)].

In my view, Helmus merely adopted well known means to accomplish a certain result as taught by the prior art and literature. See, for example, Benger patent No. 2,365,931, Page 2, Column 1, Line 36, plaintiffs' exhibit 5; Etchells American Dyestuff Reporter, January 1946, plaintiffs' exhibit 6.

This improvement is the product of high mechanical skill; it is not invention. It follows therefore that claims 1–7 inclusive of patent No. 2,499,141 and claims 1–5 inclusive of patent No. 2,499,-142 are invalid.

---

3. File Wrapper, Helmus patent No. 2,499,-142, p. 57.

4. File Wrapper, Helmus Patent No. 2,499,-142, p. 67.

5. File Wrapper, Helmus patent No. 2,499,-142, p. 68.

6. Testimony of Dr. Mark (SM 1128, 1129).

7. Testimony of Dr. Mark (SM 1196).

The plaintiffs shall have judgment declaring that they do not infringe said claims of said patents and restraining defendants from asserting such infringement, together with costs and disbursements. The defendants' counterclaim is dismissed. Counsel fees are awarded to neither side.

This decision shall constitute the findings of fact and conclusions of law.

Let judgment be entered accordingly.

### Appendix

### Patent No. 2,499,141

This is a device patent claimed to relate "to new and useful improvements in the heat-setting of textile materials."

It recites among its objectives (Col. 2, Line 10) a device for

" * * * the efficient, high speed, heat-setting of textile materials and particularly the heat-setting of textile materials containing or consisting of polyamides * * * the heat-setting of textile materials containing or consisting of polyamide fibers."

Accompanying the text are seven drawings illustrating a form of device to heat-set the fabric by running it through an enclosed zone over hollow gas heated rollers while blown heated gas is discharged upon the fabric from nozzles.

The patent sets forth seventeen claims of which the first seven are in issue in this suit and which said seven are analyzed as follows:

Claim No. 1 recites a device for heat-setting heat-settable [8] textile materials, containing a heating zone, facilities for continuously passing said materials along a path of travel through the heating zone in from 1 to 10 seconds while continuously propelling heating gas current at a velocity of at least 400 feet per minute uniformly upon one side of the material as it passes through the heating zone, while maintaining the tempera-ture of the heating gas impinging on the material and in the heating zone on all sides of the material at a predetermined heat-setting temperature for the material.

Claim No. 2 recites a device for heat-setting heat-settable textile materials, containing a heating zone, facilities for continuously passing said materials along a path of travel through the heating zone in from 1 to 10 seconds while continuously propelling heating gas current at a velocity of at least 400 feet per minute uniformly upon one side of the material as it passes through the heating zone, while maintaining the temperature of the heating gas impinging on the material and in the heating zone on all sides of the material at a predetermined heat-setting temperature of at least 300° F.

Claim No. 3 recites a device for heat-setting heat-settable textile materials, containing a heating zone, facilities for continuously passing said materials along a path of travel through the heating zone in from 1 to 10 seconds while continuously propelling heating gas current at a velocity of at least 400 feet per minute uniformly upon one side of the material as it passes through the heating zone, while maintaining the temperature of the heating gas impinging on the material and in the heating zone on all sides of the material at a predetermined heat-setting temperature of at least 300° F. and providing facilities for cooling the material upon leaving the heating zone.

Claim No. 4 recites a device for heat-setting heat-settable textile materials, containing a heating zone, facilities for continuously passing said materials along a path of travel through the heating zone in from 1 to 10 seconds while continuously propelling heating gas current at a velocity of at least 400 feet per minute uniformly upon one side of the material as it passes through the heating zone, while maintaining the temperature of the heating gas impinging on the material

---

8. The patent (Col. 3, Line 30) provides that "[t]he term "heat-settable" fabric or similar expression used herein is intended to designate any textile material containing or consisting of fibers capable of being set, (i. e. fixed) by the application of heat, into desired condition of modified characteristics."

and in the heating zone on all sides of the material at a predetermined heat-setting temperature between 300 and 500° F.

Claim No. 5 recites a device for heat-setting heat-settable textile materials, containing a heating zone dimensioned so that the material passes therethrough at a linear speed of 36 to 144 yards per minute along a path of travel through the heating zone in from 1 to 10 seconds while continuously propelling heating gas current at a velocity of at least 400 feet per minute uniformly upon one side of the material as it passes through the heating zone, while maintaining the temperature of the heating gas impinging on the material and in the heating zone on all sides of the material at a predetermined heat-setting temperature between 300 and 500° F.

Claim No. 6 recites a device for heat-setting a web of heat-settable textile material, containing a heating zone, facilities for continuously moving said web along a path of travel through the heating zone on an endlessly moveable driven web carrier in from 1 to 10 seconds while continuously propelling heating gas current at a velocity of at least 400 feet per minute uniformly upon one side of the web as it passes through the heating zone, while maintaining the temperature of the heating gas impinging on the web and in the heating zone on all sides of the web at a predetermined heat-setting temperature for the web of at least 300° F. and providing facilities for continuously and rapidly cooling the web below its heat-setting temperature.

Claim No. 7 recites a device for heat-setting a web of heat-settable textile material, containing a heating zone dimensioned so that the web passes therethrough at a linear speed of 36 to 144 yards per minute, facilities for continuously moving said web along a path of travel through the heating zone on an endlessly moveable driven web carrier in from 1 to 10 seconds while continuously propelling heating gas current at a velocity of at least 400 feet per minute uniformly upon one side of the web as it passes through the heating zone, while maintaining the temperature of the heating gas impinging on the web and in the heating zone on all sides of the web at a predetermined heat-setting temperature for the web of between 300 and 500° F. and providing facilities for continuously and rapidly cooling the web below its heat-setting temperature.

### Patent No. 2,499,142

This is a method patent claimed to relate "to new and useful improvements in the heat-setting of textile fabrics and is a continuation-in-part of" Patent No. 2,499,141.

It recites among its objectives (Column 2, Line 7)

" * * * the efficient, high speed, heat treatment of textile materials and particularly the heat setting of textile materials containing or consisting of polyamides * * * the efficient high-speed heat treatment of webs of textile material and particularly the heat setting of such webs of textile materials containing or consisting of polyamide fibers * * * the efficient high speed heat setting of preformed textile materials containing or consisting of polyamide fibers and particularly the heat setting of women's hosiery containing or consisting of polyamide fibers."

Although this is a method patent, there accompany the text fifteen drawings. Figures 1 to 7 (which are identical with figures 1 to 7 in patent 2,499,141) illustrate one form of a device used in carrying out the method by the means of heated rollers supporting the fabric; figures 8 through 12 illustrate alternate means of carrying the fabric by employment of tenter frame devices; figures 13 through 15 illustrate a device for applying the method to pre-formed pieces of textile material such as women's hosiery.

The patent sets forth fifteen claims of which the first five are in issue in this suit and which said five are analyzed as follows:

Claim No. 1 recites a method for heat-setting heat-settable [9] textile materials by continuously passing the fabric through a heating zone and continuously directing thereon a heating gas current of a velocity of at least 400 feet per minute at a predetermined heat-setting temperature, exposing the material thereto for from 1 to 10 seconds.

Claim No. 2 recites a method for heat-setting heat-settable textile materials by continuously passing the fabric through a heating zone and continuously directing thereon a heating gas current of a velocity of at least 400 feet per minute at a predetermined heat-setting temperature of from 300 to 500° F. and exposing the material thereto for from 1 to 10 seconds.

Claim No. 3 recites a method for heat-setting heat-settable textile materials by continuously passing the fabric through a heating zone and continuously directing thereon a heating gas current of a velocity of at least 400 feet per minute at a predetermined heat-setting temperature of from 300 to 500° F., exposing the material thereto for from 1 to 10 seconds and subjecting it to cooling upon leaving the heating zone.

Claim No. 4 recites a method for heat-setting a web of heat-settable textile material in extended state by continuously passing the web through a heating zone and continuously directing thereon, uniformly over the width and length thereof, a heating gas current of a velocity in excess of about 400 feet per minute at a predetermined heat-setting temperature of about 300 to 500° F., exposing the material thereto for from 1 to not more than 10 seconds and subjecting it to cooling upon leaving the heating zone.

Claim No. 5 recites a method for heat-setting a web of heat-settable poly-amide [10] fabric in extended state by con-tinuously passing the web through a heating zone and continuously directing thereon, uniformly over the width and length thereof, a heating gas current of a velocity in excess of about 400 feet per minute at a predetermined temperature of about 400 to 475° F., exposing the material thereto for from 1 to not more than 10 seconds and subjecting it to cooling upon leaving the heating zone.

9. The patent (Col. 4, Line 17) provides that "[t]he term "heat-settable" fabric or similar expression used herein is intended to designate any textile material containing or consisting of fibers capable of being set (i. e. fixed) by the application of heat, into desired condition of modified characteristics."

10. The patent (Col. 4, Line 23) provides that " * * * polyamide fabrics or fibers * * * is intended to connote any fabric or fiber consisting of or containing polyamide fibers and specifically polyamide fibers of synthetic linear poly-amides."